IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Wells Fargo Bank, National Association, as Trustee, for the Benefit of the Holders of COMM 2018-COR3 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2018-COR3,**<br><br>Plaintiff,<br><br>v.<br><br>**JTRE 240 EAST 54TH STREET LLC,**<br><br>Defendant. | **CIVIL ACTION**<br><br>NO.  22-cv-1048 |

**COMPLAINT**

Plaintiff, Wells Fargo Bank, National Association, as Trustee, for the Benefit of the Holders of COMM 2018-COR3 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2018-COR3 ("Lender"), acting by and through its Special Servicer, Midland Loan Services, a division of PNC Bank, National Association ("Midland"), for its complaint in mortgage foreclosure against defendant, JTRE 240 East 54th Street LLC ("Borrower"), avers as follows:

I.  **PARTIES, JURISDICTION AND VENUE**

1. Wells Fargo Bank, National Association, is a national banking association with its main office, as designated in its Articles of Association, located in Sioux Falls, South Dakota. Non-party Midland is the Special Servicer for Lender with respect to the Loan (as defined below).

2. Borrower is a Delaware limited liability company with its principal place of business at 362 Fifth Avenue, Suite 1200, New York, New York 10001. Upon information and

belief, all of Borrower's members are citizens of either New York or Connecticut, and none of Borrower's members is a citizen of South Dakota.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter is controversy exceeds $75,000 and the action is between citizens of different states.

4. Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because the real property that is the subject of this action is situated in this district.

## II. FACTS

### A. The Original Loan Transaction

5. On or about September 25, 2017, Loancore Capital Markets LLC f/k/a Jefferies Loancore LLC ("Original Lender") made a commercial mortgage loan to Borrower in the original principal amount of $42,000,000.00 (the "Loan").

6. The Loan is evidenced by a Loan Agreement dated as of September 25, 2017, between Borrower and Original Lender, a copy of which is attached hereto as *Exhibit A*.

7. The Loan Agreement was subsequently amended by a First Amendment to Loan Agreement, a copy of which is attached hereto as *Exhibit B*, in connection with the severance of Borrower's original promissory note into an Amended and Restated Promissory Note A-1 ("Note A-1") and an Amended and Restated Promissory Note A-2 ("Note A-2," and, together with Note A-1, the "Notes"), each by Borrower to Original Lender in the amount of $21,000,000.00 and dated May 4, 2018, copies of which are attached hereto as *Exhibits C and D*, respectively.

8. To secure repayment of the Loan, Borrower executed in favor of Original Lender an Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents and Security Agreement dated as of September 25, 2017 (the "Mortgage"), a copy of which is attached hereto as *Exhibit E*. The Mortgage was recorded with the Office of the City Register of the City of New York (the "Recorder") on October 10, 2017, as CRFN 2017000373359.

9. The Loan Agreement, the Notes, the Mortgage and various other documents executed by Borrower with respect to the Loan are collectively referred to herein as the "Loan Documents."

B. **The Assignment of the Loan to Lender**

10. The Loan was subsequently securitized and was assigned by Original Lender to Lender pursuant to a General Assignment effective May 22, 2018, a copy of which is attached hereto as ***Exhibit F***.

11. In connection with its assignment of the Loan, Original Lender executed for the benefit of Lender an Allonge to Note A-1 and an Allonge to Note A-2, copies of which are attached hereto as ***Exhibits G and H***.

12. Also in connection with its assignment of the Loan, Original Lender executed in favor of Lender an Assignment of Mortgage effective as of May 22, 2018, a copy of which is attached hereto as ***Exhibit I***, which was recorded with the Recorder on July 20, 2018, as CRFN 2018000240706.

C. **Relevant Contractual Provisions**

13. The Mortgage secures, *inter alia*, the payment of the Notes and all sums due thereunder. (*See* Mortgage at 2.)

14. Borrower is the owner of the real property located at 240 East 54th Street, in New York County, New York, as more fully described in Exhibit A to the Mortgage (the "Premises"), together with the Improvements thereon as defined in the Mortgage.

15. The Mortgage creates a first priority lien on and security interest in all of Borrower's right, title and interest in and to the Premises and the Improvements, together with all other real and personal property owned by Borrower and collectively defined in the Mortgage as the "Mortgaged Property." (*See* Mortgage at 2-4.)

16. Additionally, the Mortgage constitutes a "security agreement" within the meaning of the UCC and conveys to Lender a first priority lien on and security interest in all of Borrower's tangible and intangible personal property. (Mortgage § 12.)

17. The Loan Agreement has required at all relevant times that on each monthly Payment Date, which is defined as the sixth day of the calendar month, "Borrower shall pay interest on the unpaid Principal accrued at the Interest Rate during the Interest Period immediately preceding such Payment Date," together with specified escrow deposits for taxes, insurance and certain reserves (collectively, the "Escrow Deposits"). (Loan Agreement §§ 2.2.1(b), 3.3-3.5, 3.6.1.)

18. The Loan Agreement provides that an Event of Default shall exist if, *inter alia*, "any regularly scheduled portion of the Debt is not paid when due." (Loan Agreement § 8.1(a)(i).) "Debt" is defined to mean "the unpaid Principal, all interest accrued and unpaid thereon, any Yield Maintenance Premium, all transaction costs, all late fees, and all other sums due to Lender in respect of the Loan or under any Loan Document." (*Id*. at 4.)

19. Borrower also covenanted and agreed with Lender in Section 5.27 of the Loan Agreement that, "[w]ithout Lender's prior written consent, Borrower shall not create, incur, assume, permit or suffer to exist any Lien on all or any portion of the Property . . . unless such Lien is bonded or discharged within thirty (30) days after Borrower first receives notice of such Lien." (Loan Agreement § 5.27.) As defined, "Lien" includes "mechanic's, materialmen's and other similar liens and encumbrances." (*Id*. at 9.)

20. The Loan Agreement provides that an Event of Default shall exist if, *inter alia*, "Borrower breaches any covenant contained in Sections 5.12.1(i) through (vi), 5.15, 5.22, 5.25, 5.27, or 5.28 hereof." (Loan Agreement § 8.1(h).)

21. The Loan Agreement further provides that, "[a]fter the occurrence and during the continuance of an Event of Default, the entire unpaid Debt shall bear interest at the Default Rate," which is defined as "a rate per annum equal to the lesser of (i) the maximum rate permitted by applicable law, or (ii) five percent (5%) above the Interest Rate [of 4.1120% per annum], compounded monthly." (Loan Agreement § 2.2.2 and at 5, 6.)

22. The Loan Agreement also provides that, "[i]f any payment of Principal or interest other than the balloon payment due on the Maturity Date, is not paid by Borrower on the date on which it is due, . . . Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by applicable law (the 'Late Payment Charge')." (Loan Agreement § 2.5.3.)

23. Additionally, Borrower covenanted and agreed to "reimburse Lender within ten (10) Business Days of receipt of notice from Lender for all reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Lender or [its] Servicer . . . in connection with the Loan, including," *inter alia*, "enforcing any obligations of or collecting any payments due from Borrower under any Loan Document or with respect to the Property or in connection with any refinancing or restructuring of the Loan in the nature of a 'work-out', or any insolvency or bankruptcy proceedings." (Loan Agreement § 5.29(a)(x).)

24. The Mortgage provides that, upon the occurrence and during the continuance of an Event of Default, Lender may "declare the entire Debt to be immediately due and payable." (Mortgage § 10(a)(i); *accord* Notes, Art. 2; Loan Agreement § 8.2.1.)

25. The Loan Agreement provides that if "the Debt is accelerated by reason of an Event of Default, then Lender shall be entitled to receive, in addition to the unpaid Principal and accrued interest and other sums due under the Loan Documents, an amount equal to the

Yield Maintenance Premium applicable to such Principal so accelerated." (Loan Agreement § 2.3.1 and at 19-20 (defining Yield Maintenance Premium).)

26. Section 10 of the Mortgage provides that, upon the occurrence and during the continuance of an Event of Default, Lender may, *inter alia*, "institute a proceeding or proceedings . . . for the complete foreclosure of this Mortgage," and "apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor or any Person liable for the payment of the Debt." (Mortgage §§ 10(a)(ii), 10(a)(vii).)

27. Section 10 of the Mortgage further provides that:

> All costs and expenses of Mortgagee in exercising its rights and remedies under this Paragraph 10 (including reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Mortgagor within five (5) Business Days of notice from Mortgagee, with interest at the Default Rate for the period after notice from Mortgagee, and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Mortgage.

(Mortgage § 10(h).)

28. Additionally, the Loan Agreement provides that:

> Borrower shall pay any fees and expenses of the Servicer . . . in connection with the special servicing or work-out of the Loan or enforcement of the Loan Documents, including, special servicing fees, operating or trust advisor fees (if the Loan is a specially serviced loan or in connection with a workout), work-out fees, liquidation fees, reasonable attorneys' fees and expenses and other fees and expenses in connection with the modification or restructuring of the Loan.

(Loan Agreement § 10.3(b).)

### D.   Borrower's Defaults on its Obligations

#### 1.   The Payment Default

29. Beginning with the Payment Date for April 2020, Borrower has failed to pay to Lender the Monthly Debt Service Payment Amounts due on the Note or to make the required monthly Escrow Deposits.

6

30. Borrower's failure to make the required monthly payments when due constitutes an Event of Default under Loan Documents. (*See* Loan Agreement §§ 8.1(a)(i)-(ii).)

31. Lender, through Midland, provided a Notice of Default to Borrower by letter dated July 13, 2020 (the "Notice of Default"), a copy of which is attached hereto as **Exhibit J**, which advised Borrower that "[y]ou are in default under the Loan Documents for failure to pay the April 06, 2020 principal and interest payment as well as the escrow installments, late charges, property protection advances and default interest." (Notice of Default at 1.)

32. The Notice of Default further advised Borrower that "[f]ailure to cure the default as noticed by July 24, 2020 will result in Midland, on behalf of Lender, pursuing all remedies available under the Loan Documents, including acceleration of the balance of [the] Note, foreclosure of the Property and/or the appointment of a receiver." (Notice of Default at 1.)

33. Notwithstanding the Notice of Default, Borrower failed to cure the ongoing Event of Default.

34. Lender, through its counsel, provided a Notice of Acceleration to Borrower by letter dated December 8, 2020 (the "Notice of Acceleration"), a copy of which is attached hereto as **Exhibit K**, which advised Borrower that "AS OF THE DATE HEREOF, THE DEFAULT IDENTIFIED IN THE NOTICE OF DEFAULT HAS NOT BEEN CURED BY BORROWER AND IS CONTINUING." (Notice of Acceleration at 2.)

35. The Notice of Acceleration further advised Borrower that:

> AS A RESULT OF THE OCCURRENCE AND CONTINUANCE OF THE EVENT OF DEFAULT DESCRIBED IN THE NOTICE OF DEFAULT, (A) THE DEBT SECURED BY THE MORTGAGE IS HEREBY ACCELERATED AND DECLARED TO BE IMMEDIATELY DUE AND PAYABLE, (B) DEMAND IS HEREBY MADE OF BORROWER FOR THE IMMEDIATE AND FULL PAYMENT OF THE DEBT, AND (C) INTEREST WILL CONTINUE TO ACCRUE AT THE DEFAULT RATE UNTIL THE DEBT IS PAID IN FULL.

(Notice of Acceleration at 2.)

36. To date, Borrower has failed to pay the Debt in full or otherwise cure the ongoing Event of Default.

**2. The Lien Default**

37. On or about July 16, 2020, Lender received by mail a Mechanic's Lien filed against Borrower and Clean Market Holding, LLC, by Abeco Construction LLC on June 18, 2020, in the amount of $19,203.55 (the "Mechanic's Lien"), a copy of which is attached hereto as ***Exhibit L***.

38. By letter dated August 6, 2020, a copy of which is attached hereto as ***Exhibit M***, Lender, through its counsel, demanded that Borrower provide evidence that the Lien was timely bonded or discharged as required by Section 5.27 of the Loan Agreement.

39. Borrower did not respond to Lender's demand and, upon information and belief, has not bonded or discharged the Mechanic's Lien.

40. Borrower's failure to bond or discharge the Mechanic's Lien within 30 days of notice thereof constitutes an additional Event of Default under Loan Documents. (*See* Loan Agreement § 8.1(h).)

41. Accordingly, Lender brings this action to foreclose the Mortgage under the Loan Documents and New York law.

**E. Lender's Damages**

42. As of January 28, 2022, there was due and owing on the Loan without defense, deduction, offset, recoupment, or counterclaim the total amount of $57,650,665.13, itemized as follows:

## NOTE A-1

| | |
|---|---:|
| Principal | $21,000,000.00 |
| Interest | 1,683,864.05 |
| Default Interest | 2,240,498.71 |
| Late Charge Receivable | 181,441.29 |
| Prepayment Premium | 2,849,853.97 |
| Reconveyance/Payoff Fee | 2,000.00 |
| Protective Advance – Tax | 957,628.84 |
| Protective Advance – Legal | 18,645.90 |
| Protective Advance – Insurance | 60,784.77 |
| Protective Advance – Third Party Expenses | 12,120.80 |
| Interest on Advances | 70,036.81 |
| Special Servicing Fees | 86,479.12 |
| Liquidation Fee | 291,633.54 |
| NOTE A-1 TOTAL a/o 1/28/2022 | $29,454,987.80 |

## NOTE A-2

| | |
|---|---:|
| Principal | $21,000,000.00 |
| Interest | 1,683,864.05 |
| Default Interest | 2,240,498.71 |
| Late Charge Receivable | 80,475.22 |
| Prepayment Premium | 2,849,853.97 |
| Interest on Advances | 42,906.26 |
| Special Servicing Fees | 86,479.12 |
| Liquidation Fee | 279,856.77 |
| NOTE A-2 TOTAL a/o 1/28/2022 | $28,195,677.33 |

9

43. Additional interest and default interest on the Notes in the aggregate amount of $10,137.86 per diem, together with other fees, charges and costs recoverable under the Loan Documents, have accrued and continue to accrue on the Loan since January 28, 2022.

## COUNT ONE – MORTGAGE FORECLOSURE

44. Paragraphs 1 through 43 of this Complaint are incorporated herein by reference.

45. Borrower executed the Notes, which are secured by the Mortgage, in favor of Lender.

46. Borrower has defaulted on its obligations under the Notes, the Mortgage, the Loan Agreement and the other Loan Documents.

47. Lender is authorized by the Mortgage and by New York law to foreclose the Mortgage in the event of a default by Borrower.

48. There is currently due and owing on the Loan the sum of $57,650,665.13, together with additional accrued and accruing interest, default interest, fees, charges and costs recoverable under the Loan Documents.

WHEREFORE, Lender respectfully asks that the Court enter judgment in mortgage foreclosure in its favor and against Borrower and that:

(a) Borrower, and every person or entity whose right, title, conveyance or encumbrance is recorded subsequent to the commencement of this action and the filing of a notice of pendency thereof, be barred and forever foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Premises, including the fixtures and articles of personality upon which the Mortgage is a lien;

(b) The Mortgaged Property be decreed to be sold, according to law, and that the monies arising from such sale be brought into Court;

(c) Lender be paid the amount of $57,650,665.13, together with additional accrued and accruing interest, default interest, fees, charges and costs recoverable under the Loan Documents, so far as the amount of such monies properly applicable thereto will pay the same;

(d) Upon Lender's application, this Court forthwith appoint a receiver of the rents and profits of the Mortgaged Property during the pendency of this action with the usual powers and duties of such receivers in commercial foreclosure actions; and

(e) Lender be awarded such other and further relief as the Court in its discretion may deem just and proper.

|  |  |
|---|---|
| Dated: February 7, 2021 | */s/ Raymond A. Quaglia*<br>Raymond A. Quaglia, Esq.<br>Jacquelyn Schell, Esq.<br>Althea L. Daley, Esq.<br>BALLARD SPAHR LLP<br>1675 Broadway, 19th Floor<br>New York, NY 10019-5820<br>(646) 346-8048 (Telephone)<br>(212) 223-1942 (Fax)<br>Quaglia@ballardspahr.com<br>SchellJ@ballardspahr.com<br>DaleyA@ballardspahr.com<br><br>Counsel for Plaintiff |

DMFIRM #43245821 v2